**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

VICTOR PADI TCHIKAYA,            :
                                  :     Civil Action No. 07-5480 (FSH)
          Petitioner,             :
                                  :
     v.                           :     **OPINION**
                                  :
MICHAEL CHERTOFF, et al.,         :
                                  :
          Respondents.            :

**APPEARANCES**:

Petitioner pro se                 Counsel for Respondents
Victor Padi Tchikaya              Leah Amber Bynon
Perry County Correctional Ctr.    Assistant U.S. Attorney
Route 2 - Highway 80              970 Broad Street, Suite 700
P.O. Box 176                      Newark, NJ 07102
Uniontown, AL 36786

**HOCHBERG**, District Judge

Petitioner Victor Padi Tchikaya, an alien formerly confined at Hudson County Corrections Center in Kearny, New Jersey, and currently confined at Perry County Correctional Center in Uniontown, Alabama, has submitted a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.[1] The respondents are

---

[1] Section 2241 provides in relevant part:

(a) Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions.
(c) The writ of habeas corpus shall not extend to a prisoner unless-- ... (3) He is in custody in violation of the Constitution or laws or treaties of the United States ... .

Michael Chertoff, Secretary of the Department of Homeland Security, Scott Weber, Director of Detention and Removal, and Oscar Aviles, Warden of Hudson County Correctional Center.

Based on the submissions of the parties, this Court will deny the Petition.

## I.   BACKGROUND

Petitioner arrived in the United States on an unknown date. It is believed that Petitioner used fraudulent documents to enter the United States.  He was not lawfully admitted or paroled into the United States.

Petitioner first applied for asylum on or about October 7, 1996, under the name Hamodou Kane, claiming to be a citizen of Mauritania.  That application was denied, and Petitioner was granted leave to voluntarily depart within 30 days after January 8, 2002.  It is not known whether Petitioner departed at that time.

On or about January 16, 2001, while his first application for asylum was pending, Petitioner again applied for asylum, this time using the name Ousmane Amadou Gano, again claiming to be a citizen of Mauritania.  That application was not adjudicated, due to the discovery of the previous asylum application using a different name.

On or about January 3, 2003, Petitioner filed a third application for asylum, under the name Victor Padi Tchikaya,

claiming to be a citizen of the Republic of Congo. This application was granted on April 1, 2004. However, the Bureau of Immigration and Customs Enforcement ("ICE") subsequently learned of Petitioner's multiple applications under various names and moved to re-open and vacate the grant of asylum on the grounds of fraud. The grant of asylum was vacated and on April 5, 2007, Petitioner was order removed to the Republic of Congo or, in the alternative, to Mauritania.

A request for travel documents was sent to the Embassy of the Republic of Congo on May 18, 2007. On September 11, 2007, a Deportation Officer contacted the Embassy again. Embassy staff indicated that the file had not yet been reviewed. Embassy staff conducted a telephone interview with Petitioner on September 24, 2007. On September 26, 2007, the Embassy requested a new travel document application along with a $100.00 money order, and the Deportation Officer complied with that request. On October 26, 2007, Embassy personnel indicated that the travel documents would be issued in November 2007. During November 2007, the Deportation Officer left several messages with Embassy personnel, but the Embassy personnel did not return the Deportation Officer's calls. Also in November 2007, Petitioner submitted this Petition for writ of habeas corpus, asserting that his

3

prolonged detention is unlawful and violates the Due Process Clause of the Fifth Amendment.[2]

On January 8, 2008, Embassy personnel informed the Deportation Officer that they would like to re-interview Petitioner. The interview was conducted the next day. An internal memorandum from the Deportation Officer indicates the following interactions with Embassy personnel after the January 2008, interview.

> On 01/22/2008: I contacted Mr. Yzes with regards to the travel document. Mr. Yzes wanted to know why ICE is holding the subject this long. Mr. Yes stated that he thought that the subject would be released after 6 months in ICE custody. At this point I asked Mr. Yzes if that was the reason why they are dragging their feet in issuing the travel document, despite the fact that we sent the money order for as [sic] they requested.
>
> On 01/24/2008, I contacted Mr. Yzes, I was told by him that the subject informed him that he had filed a writ of Habeas Corpus. The subject instructed the Embassy to hold off on travel document issuance because he believed that ICE would release him. I noted in DACS, Mr. Yzes also stated that they are sorting out the cases with HQ and to call him back on Friday 01/25/2008.
>
> On 01/25/2008: I called the embassy, four times, my calls did not go through. The line was busy.
>
> On 01/28/2008: I contacted Embassy but was told that Mr. Tomas (Mr. Yzes' boss) is out for a meeting and to call back later. When I called later, I was told by a Mr. Bazurgia, that they were dealing with a Mr. Davis at HQDRO on this issue. ...

(Answer, Ex. C.)

---

[2] Petitioner has been in ICE custody since December 26, 2006.

Respondents answered the Petition on March 13, 2008. The record submitted with the Answer does not reflect any further contacts between ICE and Embassy personnel. Respondents contend that Petitioner's detention is lawful because he has failed to cooperate in his removal. See 8 U.S.C. § 1231(a)(1)(C). Specifically, Respondents contend that Petitioner has failed to cooperate by failing to provide documentary evidence of his true identity and by instructing Mr. Yzes in January 2008 to "hold off" processing the application for a travel document.

In reply, Petitioner denies that he ever asked an Embassy official to "hold off" from processing the application for a travel document. This matter is now ready for disposition.

## II.  ANALYSIS

Post-removal-order detention is governed by 8 U.S.C. § 1231(a). Section 1231(a)(1) requires the Attorney General to attempt to effectuate removal within a 90-day "removal period."

> The removal period begins on the latest of the following:
>
> (i) The date the order of removal becomes administratively final.
> (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
> (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B).

5

Section 1231(a)(6) permits continued detention if removal is not effected within 90 days.  However, the Supreme Court has held that such post-removal-order detention is subject to a temporal reasonableness standard.  Specifically, once a presumptively-reasonable six-month period of post-removal-order detention has passed, a detained alien must be released if he can establish that his removal is not reasonably foreseeable.  See Zadvydas v. Davis, 533 U.S. 678 (2001); Clark v. Martinez, 543 U.S. 371 (2005).

Thus, the alien bears the initial burden of establishing that there is "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," after which the government must come forward with evidence to rebut that showing.  Zadvydas, 533 U.S. at 699-701.

However, "[t]he removal period shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal." 8 U.S.C. § 1231(a)(1)(C).  Federal courts have recognized that "Zadvydas does not save an alien who fails to provide requested documentation to effectuate his removal.  The reason is self-evident: the detainee cannot convincingly argue that there is no

6

significant likelihood of removal in the reasonably foreseeable future if the detainee controls the clock." Pelich v. INS, 329 F.3d 1057, 1060 (9th Cir. 2003) (cited with approval in U.S. ex rel. Kovalev v. Ashcroft, 71 Fed.Appx. 919, 924 (3d Cir. 2003).

Respondents assert in their brief that Petitioner has failed to cooperate, and that his continued detention is therefore lawful. Specifically, Respondents contend that Petitioner's identity documents are "questionable."[3] In addition to provision of these documents, authentic or not, it appears that Petitioner did complete the required questionnaire and did participate in two interviews with Embassy personnel. Respondents do not assert, and the record contains no evidence, that officials of the Republic of Congo have questioned the authenticity of the identity documents or the accuracy of the information contained in them or provided by Petitioner in other questionnaires and interviews. Nor does the record contain any information suggesting that Embassy officials have determined that Petitioner

---

[3] The only time that the characterization of the identity documents as "questionable" appears in the record is in the September 10, 2007, Post Order Custody Review Worksheet. There is no elaboration, in that Worksheet, of the "questionable" nature of the documents. In Respondents' brief, counsel argues that the documents are "questionable" because the proffered birth certificate does not have an issuance date and the National Identity Card carries an issuance date of May 10, 1997, while Petitioner was in the United States. That Worksheet also reflects that Petitioner has not taken any actions to prevent removal.

7

is not a citizen of the Republic of Congo or that they will not issue travel documents.

Respondents' allegation of non-cooperation appears to be based primarily on mere suspicion that Victor Padi Tchikaya is not Petitioner's true name and that Petitioner's identity documents are fraudulent, unsupported by any expert opinion. That is not a sufficient basis on which to detain Petitioner indefinitely.  See, e.g., Abdel-Muhti v. Ashcroft, 314 F.Supp.2d 418 (M.D. Pa. 2004); Clark v. Ashcroft, 2003 WL 22351953 (E.D. Pa. Sept. 16, 2003).  Moreover, this Court is not prepared to make a finding of non-cooperation based upon the record before it -- an immigration officer's memorandum that an Embassy official reported a detainee's statement to him, made more than ten months after entry of the final order of removal, that the detainee has filed a petition for writ of habeas corpus or, even, upon a report that the detainee suggested to the Embassy official that the filing of the habeas petition might be a reason to delay issuing travel documents.[4]  Certainly, putting aside the self-serving and hearsay nature of the Embassy official's report, Petitioner is in no position to "instruct" an Embassy official as to how he should perform his official duties.

---

[4] In denying that he made such a suggestion, Petitioner notes that the January 2008 telephone interview was conducted in the presence of the Hudson County Corrections Center's social worker.

Nevertheless, Petitioner has not established his entitlement to the writ. Petitioner relies upon the mere passage of time as a ground for relief. Under the circumstances presented here, that is not a sufficient basis for this Court to find that there is no reasonable likelihood of removal in the foreseeable future.

Federal courts disagree as to the extent to which the passage of time can suffice to meet the alien's burden. Compare Fahim v. Ashcroft, 227 F.Supp.2d 1359, 1365-68 (N.D. Ga. 2002) (mere passage of time insufficient to meet alien's burden of proof), with Seretse-Khama v. Ashcroft, 215 F.Supp.2d 37, 48-54 (D.D.C. 2002) (continued detention for over three years, coupled with eight-month delay since INS last contacted destination country, suffices to meet alien's burden); Lema v. U.S. I.N.S., 214 F.Supp.2d 1116, 1118 (W.D. Wash 2002), aff'd on other grounds, 341 F.3d 853 (9th Cir. 2003) (where destination country's lack of response to request for travel documents is combined with INS inability to explain silence and absence of any indication that situation may change, continued detention would be unreasonable but, where destination country's failure to respond suggests nothing more than "bureaucratic inertia," removal remains "foreseeable").[5]

---

[5] See also Kacanic v. Elwood, 2002 WL 31520362 (E.D. Pa. 2002) (passage of one year, coupled with inaction of foreign embassy and INS admission that efforts to obtain travel documents have been "fruitless," suffices to meet alien's burden); Khan v. Fasano, 194 F.Supp.2d 1134, 1136-37 (S.D. Cal. 2001) (where alien

9

Here, the record indicates that Embassy officials, while they have questioned Petitioner's lengthy confinement, are continuing to review the request for travel documents. The record submitted here reflects that communications between Embassy personnel and the Deportation Officer stalled in January 2008, but does not reflect a decision to deny travel documents. To the contrary, the Deportation Officer's memorandum indicates that Embassy personnel told him they would be working with an official at ICE headquarters on this matter. Accordingly, Petitioner has failed to meet his burden.

As a caveat to this ruling, however, the Court notes that immigration officials bear some responsibility for articulating the information they require from Petitioner, for focusing their efforts on obtaining appropriate documentation and other information in order to expedite the removal, and for pursuing discussions with officials of the Republic of Congo to a conclusion. In addition, although the final order of removal lists Mauritania as an alternative removal destination, the

---

has been in post-removal order custody for ten months, and meeting is scheduled with destination country to discuss request for travel documents, delay alone is not sufficient to meet alien's burden; however, alien granted leave to refile petition in six months' time if his removal has not then been effectuated); Okwilagwe v. INS, 2002 WL 356758 (N.D. Texas March 1, 2002) (passage of eleven months without action by destination country sufficient to meet alien's burden, even where destination country orally promised travel documents "in a few days," but failed to provide them over period of two months).

record does not reflect any effort to explore removal to Mauritania.  Similarly, Petitioner's efforts to assist in his removal, while they may not rise to the level of actions to "prevent" his removal, appear half-hearted at best.  This Court shall consider a renewed application for relief if, after full cooperation from Petitioner, the government remains unable to effectuate his removal.

### III.  CONCLUSION

For the reasons set forth above, the Petition is denied.  An appropriate order follows.

/s/ Faith S. Hochberg
United States District Judge

Dated:  May 29, 2008